## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| BRANDI R. BRUNER, individually, and on behalf of a class of others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | CIVIL ACTION No. 07-2164-KHV |
| SPRINT/UNITED MANAGEMENT CO., *et al.*, | ) ) ) ) | |
| Defendants. | ) ) ) | |

| | | |
|---|---|---|
| JENA LIPNICK and JENNIFER FONG, individually, and on behalf of a class of others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | CIVIL ACTION No. 08-2133-KHV |
| SPRINT/UNITED MANAGEMENT CO., *et al.*, | ) ) ) ) | |
| Defendants. | ) ) | |

| | | |
|---|---|---|
| JOHNNY ALMONTE, individually, and on behalf of a class of others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | CIVIL ACTION No. 08-2149-KHV |
| NEXTEL OF NEW YORK, INC., | ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF ATTORNEYS' FEES, EXPENSES, AND CLASS REPRESENTATIVES' INCENTIVE AWARDS

In this hard fought and complex litigation, class counsel obtained a $2,000,000 settlement on behalf of a class of California call center workers, and a separate $325,000 settlement on behalf of a class of New York call center workers. As the record before this Court demonstrates, these favorable results are the result of class counsel's hard work and diligent efforts. *See* Declaration of George Hanson, attached hereto as Exhibit 1 ("Hanson Decl."). For the reasons set forth herein, counsel for the California and New York classes now request that the Court award them attorneys' fees and costs in the amount of thirty percent (30%) of the respective settlement funds. For the California settlement, thirty percent of the settlement fund equates to $600,000. For the New York settlement, thirty percent of the settlement fund equates to $97,500.

The Tenth Circuit has previously endorsed awarding attorneys' fees and expenses as a percentage of the settlement fund, and the requested percentage is consistent with awards of attorneys' fees in this and other circuits. Moreover, the requested attorneys' fees in this case satisfies the factors listed in *Johnson v. George Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), which the Tenth Circuit has adopted as a guidepost in awarding fees. *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454-55 (10th Cir. 1988). Accordingly, for the reasons set forth herein, class counsel respectfully submit that the requested award is fair and reasonable under applicable legal standards.

## I.    FACTUAL AND PROCEDURAL HISTORY

Plaintiffs previously have set forth the detailed factual and procedural history of the instant litigation, and Plaintiffs incorporate herein by reference the background information contained in their Memorandum in Support of Plaintiffs' Unopposed Motion for Preliminary

Approval of Class Settlements [Doc. # 259] and Memorandum in Support of Plaintiffs' Unopposed Motion for Final Approval of FLSA Collective Action Settlement [Doc. # 257].[1] The previously-filed pleadings demonstrate that the parties in this litigation vigorously advocated their respective positions and that the settlement was the product of extensive, arms-length negotiations that took place over the course of many months.

After Plaintiffs filed their initial settlement pleadings, the Court sustained Plaintiffs' Unopposed Motion for Preliminary Approval of Class Settlements [Doc. # 258] and preliminarily certified the California and New York classes for settlement purposes. *See* Order [Doc. # 261]. Regarding the California class, the Court appointed Jena Lipnick and Jennifer Fong to serve as class representatives, and it appointed Stueve Siegel Hanson LLP and Goldstein Demchak Baller Borgen & Dardarian as class counsel. Regarding the New York class, the Court appointed Johnny Almonte to serve as the class representative, and it appointed Stueve Siegel Hanson LLP and Outten & Golden LLP to serve as class counsel. *Id.* The Court also ordered counsel to submit an application for final approval of attorneys' fees, expenses, and approval of the class representatives' incentive awards. *Id.*

## II.   PLAINTIFFS' COUNSEL ARE ENTITLED TO THEIR REQUESTED FEES.

### A.   Plaintiffs' Counsel Are Entitled to a Reasonable Fee of Thirty Percent (30%) of the California and New York Settlement Funds.

Plaintiffs are entitled to reasonable attorneys' fees to compensate their counsel for their work in recovering unpaid wages on behalf of the California and New York classes. The Settlement Term Sheet signed by the parties provides that counsel "will apply for fees and costs in an amount not to exceed a total of thirty percent (30%) of the" California and New York settlement funds. *See* Hanson Decl. ¶ 2. This same percentage was ultimately codified in the parties' formal Settlement Agreement. *See* Settlement Agreement, ¶ 17. Therefore, pursuant to

---

[1]     Fees related to the FLSA settlement have been brought by separate motion. *See* Doc. 256 and Doc. 257.

the parties' agreement and through the pending Motion, Plaintiffs' counsel are requesting an award of thirty percent (30%) of both the California and New York settlement funds. Because this percentage is reasonable and well within the fee range approved by courts in similar litigation, it should be approved by the Court.

**B.   The Tenth Circuit Endorses the Percentage of the Common Fund Method.**

In the Tenth Circuit, the preferred method for awarding attorneys' fees in common fund cases such as this is to award a percentage of the fund. *See Rosenbaum v. MacAllister*, 64 F.3d 1439, 1445 (10th Cir. 1995); *Gottlieb v. Barry*, 43 F.3d 474, 482 (10th Cir. 1994); *Ramah Navaho Chapter v. Babbitt*, 50 F. Supp. 2d 1091, 1096-1097 (D.N.M. 1998); *In re Sprint Corp. ERISA Litig.*, 443 F. Supp. 2d 1249, 1269 (D. Kan. 2006); *see also* Report of the Third Circuit Task Force, *Court Awarded Attorney Fees*, 108 F.R.D. 237, 255-56 (1985). The common fund doctrine "rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its costs are unjustly enriched at the successful litigant's expense." *Brown*, 838 F.2d at 455 (quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)). Thus, the percentage award results "in a sharing of the fees among those benefited by the litigation." *Brown*, 838 F.2d at 454.

The percentage of the fund method is preferred because, among other factors, it rewards prompt and efficient resolution of class litigation, while strict application of the alternative "lodestar" methodology encourages inefficiency and resistance to prompt settlement. *See Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1268 (D.C. Cir. 1993). In addition, "a percentage of the fund approach more accurately reflects the economics of litigation practice . . . and most closely approximates the manner in which attorneys are compensated in the marketplace for these types of cases." *Id.* at 1269 (citations omitted).

In applying the percentage of the fund methodology, courts in the Tenth Circuit commonly review the twelve factors articulated by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).  The *Johnson* factors are:  (1) the time and labor required, (2) the novelty and difficulty of the questions presented by the case, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorneys due to the acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) any time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

Application of the twelve *Johnson* factors, however, is not rigid and is not presented in any particular order.[2]  The Tenth Circuit has cautioned that while the *Johnson* factors are relevant, they were developed in the statutory fee context and "the inherent differences between statutory fee and common fund cases could justify a trial judge's decision to assign different relative weights to those factors in the two types of cases."  *See Brown*, 838 F.2d at 455.  The applicable *Johnson* factors support Plaintiffs' requests for fees in this case.

### 1.    *The Amount Involved and the Results Obtained (Factor 8)*

The California Settlement Fund is $2,000,000.00.  After amounts set aside for attorneys' fees, expenses, and incentive payments, the net amount to distribute to the approximately 1,000 California class members is $1,380,000.00.  Individual settlement allocations for California class members have been calculated by the Settlement Administrator in accordance with an agreed distribution formula that primarily takes into account the number of days worked, the amount of

---

[2]        By way of example, Factor 7 (time limitations imposed) and Factor 11 (nature and length of client relationship) are not applicable in this case.  Courts recognize that not all twelve factors will apply in every case, and this fact does not affect the appropriateness of awarding a percentage of the fund.  *See In re Sprint Corp. ERISA Litig.*, 443 F. Supp. 2d at 1270 (noting the inapplicability of three of the *Johnson* factors).

overtime worked, and the hourly rate of pay during the class period. In addition, $500 was allocated to each California Class Member whose employment terminated during the Class period to account for alleged "waiting time" claims. Hanson Decl. ¶ 3.

The New York Settlement Fund is $325,000.00. After amounts set aside for attorneys' fees, expenses, and incentive payments, the net amount to distribute to the approximately 850 New York class members is $217,500.00.[3] Individual settlement allocations for New York class members have been calculated by the Settlement Administrator in accordance with an agreed distribution formula that primarily takes into account total weeks worked, overtime weeks worked, and hourly rate of pay during the class period. Hanson Decl. ¶ 4.

In light of the legal and factual complexities and challenges presented by this case, this settlement is a favorable result for the California and New York Classes. The net value of the settlements provided to all class members is illustrated in the attached spreadsheet, which shows the individual allocations for each class member. *See* Exhibit 2. For individuals employed during a significant portion of the applicable class period, settlement amounts are in the thousands of dollars. Plaintiffs' counsel believes that the settlement delivers a per class member recovery approximating the amount individual claimants could have expected to receive assuming a successful outcome through trial. The fact that these amounts are available to class members now without the uncertainty of trial, and are being delivered through settlement rather than after years of additional litigation, further demonstrates the positive results obtained. Hanson Decl. ¶ 5.

---

[3]     As previously explained, the New York settlement fund and its *per capita* allocations are comparatively smaller than the California settlement figures for two reasons: (1) Sprint's defenses to the New York claims were arguably far stronger based on different practices in the New York and California call centers, and (2) California labor law arguably provides more expansive remedies. *See* Plaintiffs' Memorandum [Doc. # 259] at p. 11, n.9.

## 2. *Awards in Similar Cases (Factor 12)*

Based on historical awards of attorneys' fees in similar cases, the percentage of the fund requested – thirty (30) percent – is presumptively reasonable.  For example, this Court has previously approved attorneys' fee awards amounting to thirty percent of a settlement fund in similar FLSA cases. *See West, et al. v. First Franklin Fin. Corp.*, Order Finally Approving FLSA· Collective Action Settlement, Case No. 2:06-CV-02064-KHV-JPO (D. Kan. July 31, 2007) (awarding class counsel attorneys' fees and costs in the amount of thirty percent (30%) of the FLSA Settlement Fund); *Horn, et al. v. Principal Fin. Group, Inc. and Principal Residential Mortgage, Inc.*, Order Approving Settlements, Case No. 2:05-cv-2032-KHV (D. Kan. December 2, 2005) (awarding counsel thirty percent (30%) of settlement fund made available to eligible plaintiffs).  Other federal courts in this district and nationwide are in agreement that attorneys' fees in the range of thirty percent of the settlement fund in wage and hour cases are reasonable. *See Barnwell, et al. v. Corrections Corporation of America,* Order Approving Settlement Agreement, Case No. 08-CV-02151-JWL-DJW (D. Kan. Feb. 12, 2009) (approving as an attorneys' fee award thirty-three percent (33%) of the FLSA Settlement Fund); *Perry v. National City Bank*, Order Approving Settlement, Attorneys' Fees and Service Awards, Case No. 3:05-CV-00891-DRH-PMF (S.D. Ill. March 3, 2008) (approving requests for attorneys' fees and costs in the amount of thirty-three percent (33%) of the Settlement Fund); *Niday v. SCK Financial Corp.,* Order Approving Settlements, Case No. 06-CV-2219-CM (D. Kan. March 14, 2007) (approving requested fee award of twenty-eight percent (28%) of settlement fund); *Qualls v. sanofi-aventis U.S. LLC*, Case No. 06-0435-CV-W-SOW (W.D. Mo. Dec. 4, 2006) (awarding counsel thirty percent (30%) of settlement fund made available to eligible plaintiffs); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174 (W.D.N.Y. 2005) (approving fee award of 38.26% of total settlement fund in FLSA collective action and Rule 23 class action case); *Kedrick v. ABC*

*Television Appliance Rental*, Case No. 97-69, 1999 WL 1027050 (N.D. W. Va. May 12, 1999) (approving thirty percent (30%) fee award of common fund in FLSA collective action and Rule 23 class action case); *Camp v. The Progressive Corp.*, Case No. 01-2680, 2004 WL 2149079 n. 10 (E.D. La. Sept. 23, 2004) (acknowledging that a 29.6% fee award of a common fund would be reasonable in FLSA collective action context).

### 3. Time/Labor Required and Preclusion of Other Employment (Factors 1 and 4)

Although Plaintiffs' counsel was successful in achieving a favorable result before trial, a substantial amount of time and energy was required to obtain this result. As of the date of this filing, Plaintiffs' counsel has expended approximately 1,065 hours in the more than twenty months spent prosecuting the California and New York actions and negotiating and administering the settlement. Although much of the work is of a combined nature, Plaintiffs' counsel estimates that 900 of these hours are allocated to the California action and 165 of these hours are allocated to the New York action.[4]   Importantly, the requested attorneys' fee includes compensation for all time that Plaintiffs' counsel will be required to spend administering the settlement in the future. Hanson Decl. ¶ 6.

This case was prosecuted efficiently, and its demands did not consume all of Plaintiffs' counsel's time and energy. However, the significant hours devoted to this lawsuit necessarily precluded Plaintiffs' counsel from spending that time on other cases. *See In re Sprint Corp. ERISA Litig.*, 443 F. Supp. at 1270.

### 4. The Customary Fee and Whether It Is Fixed or Contingent (Factors 5 and 6)

The customary fee in a case such as this is a fee contingent upon a successful outcome. *See Ramah Navajo Chapter*, 50 F. Supp. 2d at 1104. In prosecuting its usual commercial

---

[4] Attorney time allocated to the separate FLSA settlement has been excluded from these numbers.

(including wage and hour) actions, Plaintiffs' counsel customarily enters into contingent attorneys' fee agreements providing for a percentage of the recovery (usually 35 to 40 percent) if there is a recovery, and no fee if there is no recovery.  In this case, the class representatives and each of the opt-in Plaintiffs executed a retainer agreement which entitled Plaintiffs' counsel to receive thirty-five percent (35%) of any recovery, if any, obtained on Plaintiff's behalf.  In this instance, therefore, the requested percentage of the fund is substantially less than that contained in the retainer agreements executed with existing Plaintiffs, and therefore, below the contingency percentage available in the marketplace.  *See Swedish Hosp. Corp.*, 1 F.3d 1261.  *See*  Hanson Decl. ¶ 7.

### 5.    *Novelty/Difficulty of Issues and Undesirability of the Case (Factors 2 and 10)*

Plaintiffs bore the burden of ultimately demonstrating to the Court that class certification was appropriate under Fed. R. Civ. P. 23.  Defendants vigorously argued that maintenance of this case as an opt-out class action was inappropriate due to such factors as (1) differences in customer care representatives job duties and responsibilities from call center to call center; (2) differences in the quantitative time demands of the customer care position, as well as individualized work habits and experiences, resulting in wide variations of hours worked; and (3) difficulty in establishing damages on a class-wide basis.  Plaintiffs believed this case was suitable for class action treatment, but achieving class certification and maintaining it through trial was not a foregone conclusion.  *See* Hanson Decl. ¶ 8.

In addition to this procedural hurdle, Plaintiffs faced uncertainty in prevailing on the merits of their claims.  Plaintiffs alleged that Defendants' timekeeping systems did not accurately record all of their compensated working time.  Defendants vigorously disagreed and asserted that Plaintiffs were fully paid under applicable law.  Defendants also argued and developed a quantitative analysis to support the contention that any time not compensated was de minimis.

Although Plaintiffs believe the merits of their claims were strong there were substantial risks associated with continuing to prosecute the case, including risks associated with establishing both liability and damages.  *See* Hanson Decl. ¶ 9.

### 6.     *Skill Required and Attorneys' Experience, Reputation, and Ability (Factors 3 and 9)*

Large scale wage and hour class actions of this type are, by their very nature, complicated and time-consuming.  Any law firm undertaking representation of large numbers of affected employees in wage and hour actions inevitably must be prepared to make a tremendous investment of time, energy, and resources.  Due also to the contingent nature of the customary fee arrangement, lawyers must be prepared to make this investment with the very real possibility of an unsuccessful outcome and no fee of any kind.  The demands and risks of this type of litigation overwhelm the resources – and deter participation – of many traditional claimants' firms.  *See* Hanson Decl. ¶ 10.

Class counsel in this case – Stueve Siegel Hanson LLP, Goldstein Demchak Baller Borgen & Dardarian, and Outten & Golden LLP, all have substantial experience in prosecuting large scale wage and hour class and collective actions such as this.  Class Counsel's professional accomplishments are summarized in the firm resumes attached hereto as Exhibits 3, 4, and 5.

### 7.     *Summary*

As demonstrated above, Plaintiffs' requested fees and expenses are reasonable and justified both under the agreement between the parties and the factors articulated in *Johnson*. Accordingly, the Court should grant Plaintiffs' Motion and finally approve Plaintiffs' request for fees and expenses.

### III.     CLASS REPRESENTATIVES ARE ENTITLED TO INCENTIVE AWARDS.

In light of their efforts resulting in a favorable settlement on behalf of the California and New York Classes, Jena Lipnick, Jennifer Fong, and Johnny Almonte (collectively "Class

Representatives") are entitled to incentive payments. The Settlement Agreement provides that Defendants will pay each Class Representative an incentive of no greater than $10,000 for their service as Class Representative. *See* Settlement Agreement, ¶ 13.h.

The time an individual devotes to a lawsuit which inures to the common benefit of the class warrants entitlement to an incentive award "above and beyond what the typical class member is receiving." *In re Sprint Corp. ERISA Litig.*, 443 F. Supp. 2d 1249, 1271 (D. Kan. 2006) (awarding $5,000 incentive award to each of four class representatives); *see also Cimarron Pipeline Constr., Inc. v. National Council on Compensation Ins.*, 1993 WL 355466 (W.D. Okla. June 8, 1993) (awarding $10,000 incentive award to each of three class representatives); *Camp*, 2004 WL 2149079 (approving up to $10,000 in incentive awards to class representative and other plaintiffs participating in the litigation).

In this case, Class Representatives provided invaluable guidance and assistance to Plaintiffs' counsel in prosecuting these overtime claims on behalf of the California and New York Classes. Specifically, they assisted Plaintiffs' counsel in evaluating Defendants' proffered defenses to this action, participated in discovery, and helped engineer this favorable settlement. There is no question that Class Representatives' conduct has inured to the substantial benefit of the respective classes. Without their efforts, this case would not have been brought and this settlement would not have been achieved. The additional amounts allocated to Ms. Lipnick, Ms. Fong and Mr. Almonte are further justified as each has executed a general release as opposed to the more limited release provided by class members. *See* Hanson Decl. ¶ 11.

For these reasons and in light of these efforts, payment of the requested incentive of $10,000 to each Class Representative is justified.

## IV.    CONCLUSION

For the reasons set forth herein, Plaintiffs respectfully request that the Court grant their Motion for Final Approval of Attorneys' Fees and Expenses, and Class Representatives' Incentive Awards.

Respectfully submitted,


_____/s/ George A. Hanson_____
**STUEVE SIEGEL HANSON LLP**
George A. Hanson            KS Bar # 16805
Email: hanson@stuevesiegel.com
Norman E. Siegel            D. Kan # 70354
Email: siegel@stuevesiegel.com
Matthew L. Dameron          KS Bar # 21071
Email: dameron@stuevesiegel.com
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Tel:    816-714-7100
Fax:    816-714-7101
**ATTORNEYS AND CO-COUNSEL FOR PLAINTIFFS IN ALL CASES**


**OUTTEN & GOLDEN LLP**
Justin M. Swartz (*pro hac vice*)
3 Park Avenue, 29th Floor
New York, New York 10016
Tel:    (212) 245-1000
Fax:    (212) 977-4005
**CO-COUNSEL FOR *ALMONTE* PLAINTIFFS**


**GOLDSTEIN DEMCHAK BALLER BORGEN & DARDARIAN**
David Borgen (*pro hac vice*)
300 Lakeside Drive, Suite 1000
Oakland, California 94612
Tel:    (510) 763-9800
Fax:    (510) 835-1417
**CO-COUNSEL FOR *LIPNICK* PLAINTIFFS**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies on the 12th day of June, 2009, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

> Hunter R. Hughes, III
> J. Timothy McDonald
> Rogers & Hardin LLP
> 2700 International Tower
> 229 Peachtree Street, N.E.
> Atlanta, Georgia 30303-1601
>
> Michael L. Blumenthal
> Seyferth Blumenthall & Harris LLC
> 300 Wyandotte – Ste. 430
> Kansas City, Missouri 64105
>
> ATTORNEYS FOR DEFENDANTS


                                        _____/s/ George A. Hanson_____
                                        Attorney for Plaintiffs

SSH 0566-123645                         13