# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| BRANDI R. BRUNER, individually, and on behalf of a class of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SPRINT/UNITED MANAGEMENT CO., *et al.*,<br><br>Defendants. | CIVIL ACTION<br>No. 07-2164-KHV |
| JENA LIPNICK and JENNIFER FONG, individually, and on behalf of a class of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SPRINT/UNITED MANAGEMENT CO., *et al.*,<br>Defendants. | CIVIL ACTION<br>No. 08-2133-KHV |
| JOHNNY ALMONTE, individually, and on behalf of a class of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NEXTEL OF NEW YORK, INC.,<br><br>Defendant. | CIVIL ACTION<br>No. 08-2149-KHV |

**DECLARATION OF GEORGE HANSON IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF ATTORNEYS' FEES, EXPENSES, AND CLASS REPRESENTATIVES' INCENTIVE AWARDS**

I, George A. Hanson, a partner with Stueve Siegel Hanson LLP ("SSH" or "Plaintiffs' Counsel"), being first duly sworn to oath, deposes and says:

1. I am a member in good standing of the State Bar of Kansas, and am admitted to practice in this judicial district. I am a partner in the law firm Stueve Siegel Hanson LLP ("SSH"), and one of the lead lawyers for Plaintiffs in the above-captioned matter.

2. The Settlement Term Sheet signed by the parties provides that counsel "will apply for fees and costs in an amount not to exceed a total of thirty percent (30%) of the" California and New York settlement funds.

3. The California Settlement Fund is $2,000,000.00. After amounts set aside for attorneys' fees, expenses, and incentive payments, the net amount to distribute to the approximately 1,000 California class members is $1,380,000.00. Individual settlement allocations for California class members have been calculated by the Settlement Administrator in accordance with an agreed distribution formula that primarily takes into account the number of days worked, the amount of overtime worked, and the hourly rate of pay during the class period. In addition, $500 was allocated to each California Class Member whose employment terminated during the Class period to account for alleged "waiting time" claims.

4. The New York Settlement Fund is $325,000.00. After amounts set aside for attorneys' fees, expenses, and incentive payments, the net amount to distribute to the approximately 850 New York class members is $217,500.00. Individual settlement allocations for New York class members have been calculated by the Settlement Administrator in

accordance with an agreed distribution formula that primarily takes into account total weeks worked, overtime weeks worked, and hourly rate of pay during the class period.

5. In light of the legal and factual complexities and challenges presented by this case, this settlement is a favorable result for the California and New York Classes. The net value of the settlements provided to all class members is illustrated in the spreadsheet, attached as Exhibit 2 to Plaintiffs' Memorandum in Support, which shows the individual allocations for each class member. For individuals employed during a significant portion of the applicable class period, settlement amounts are in the thousands of dollars. Plaintiffs' counsel believes that the settlement delivers a per class member recovery approximating the amount individual claimants could have expected to receive assuming a successful outcome through trial. The fact that these amounts are available to class members now without the uncertainty of trial, and are being delivered through settlement rather than after years of additional litigation, further demonstrates the positive results obtained.

6. Although Plaintiffs' counsel was successful in achieving a favorable result before trial, a substantial amount of time and energy was required to obtain this result. As of the date of this filing, Plaintiffs' counsel has expended approximately 1,065 hours in the more than twenty months spent prosecuting the California and New York actions and negotiating and administering the settlement. Although much of the work is of a combined nature, Plaintiffs' counsel estimates that 900 of these hours are allocated to the California action and 165 of these hours are allocated to the New York action. Importantly, the requested attorneys' fee includes compensation for all time that Plaintiffs' counsel will be required to spend administering the settlement in the future. Attorney time allocated to the separate FLSA settlement has been excluded from these numbers.

7. In prosecuting its usual commercial (including wage and hour) actions, Plaintiffs' counsel customarily enters into contingent attorneys' fee agreements providing for a percentage of the recovery (usually 35 to 40 percent) if there is a recovery, and no fee if there is no recovery. In this case, the class representatives and each of the opt-in Plaintiffs executed a retainer agreement which entitled Plaintiffs' counsel to receive thirty-five percent (35%) of any recovery, if any, obtained on Plaintiff's behalf.

8. Plaintiffs bore the burden of ultimately demonstrating to the Court that class certification was appropriate under Fed. R. Civ. P. 23. Defendants vigorously argued that maintenance of this case as an opt-out class action was inappropriate due to such factors as (1) differences in customer care representatives job duties and responsibilities from call center to call center; (2) differences in the quantitative time demands of the customer care position, as well as individualized work habits and experiences, resulting in wide variations of hours worked; and (3) difficulty in establishing damages on a class-wide basis. Plaintiffs believed this case was suitable for class action treatment, but achieving class certification and maintaining it through trial was not a foregone conclusion.

9. In addition to this procedural hurdle, Plaintiffs faced uncertainty in prevailing on the merits of their claims. Plaintiffs alleged that Defendants' timekeeping systems did not accurately record all of their compensated working time. Defendants vigorously disagreed and asserted that Plaintiffs were fully paid under applicable law. Defendants also argued and developed a quantitative analysis to support the contention that any time not compensated was de minimis. Although Plaintiffs believe the merits of their claims were strong there were substantial risks associated with continuing to prosecute the case, including risks associated with establishing both liability and damages.

10. Large scale wage and hour class actions of this type are, by their very nature, complicated and time-consuming. Any law firm undertaking representation of large numbers of affected employees in wage and hour actions inevitably must be prepared to make a tremendous investment of time, energy, and resources. Due also to the contingent nature of the customary fee arrangement, lawyers must be prepared to make this investment with the very real possibility of an unsuccessful outcome and no fee of any kind. The demands and risks of this type of litigation overwhelm the resources – and deter participation – of many traditional claimants' firms.

11. Class Representatives provided invaluable guidance and assistance to Plaintiffs' counsel in prosecuting these overtime claims on behalf of the California and New York Classes. Specifically, they assisted Plaintiffs' counsel in evaluating Defendants' proffered defenses to this action, participated in discovery, and helped engineer this favorable settlement. There is no question that Class Representatives' conduct has inured to the substantial benefit of the respective classes. Without their efforts, this case would not have been brought and this settlement would not have been achieved. The additional amounts allocated to Ms. Lipnick, Ms. Fong and Mr. Almonte are further justified as each has executed a general release as opposed to the more limited release provided by class members.

I declare under penalty of perjury under the laws of the United States and pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.

Executed on this 12th day of June, 2009.

George A. Hanson