# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| BRANDI R. BRUNER, individually,<br>and on behalf of a class of others<br>similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION |
| | ) | No. 07-2164-KHV |
| SPRINT/UNITED MANAGEMENT CO.,<br>et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| JENA LIPNICK and JENNIFER FONG,<br>individually, and on behalf of a class of<br>others similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION |
| | ) | No. 08-2133-KHV |
| SPRINT/UNITED MANAGEMENT CO.,<br>et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| JOHNNY ALMONTE, individually,<br>and on behalf of a class of others similarly<br>situated, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION |
| | ) | No. 08-2149-KHV |
| NEXTEL OF NEW YORK, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter comes before the Court on <u>Plaintiffs' Unopposed Motion For Final Approval Of FLSA Collective Action Settlement</u> ("<u>Plaintiffs' FLSA Motion</u>") (Doc. #256) filed January 13, 2009. For substantially the reasons set forth in the memorandum in support of the motion, <u>see</u> <u>Memorandum In Support Of Plaintiffs' Unopposed Motion For Final Approval Of FLSA Collective Action Settlement</u> ("<u>Plaintiffs' Memorandum</u>") (Doc. #257) filed January 13, 2009, except with respect to attorneys' fees and costs, the Court hereby approves the parties' proposed settlement of this bona fide dispute under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 <u>et seq.</u>

## Procedural History

On April 24, 2007, on behalf of herself and others similarly situated, Brandi Bruner filed a collective FLSA action complaint in this Court. In the complaint, plaintiff alleged that Sprint/United Management Company and Sprint Nextel Corporation (collectively "Sprint") violated federal wage and hour law by failing to adequately compensate non-exempt customer specialist employees at Sprint's call center facilities nationwide. <u>See</u> <u>Plaintiffs' Memorandum</u> (Doc. #257) at 3. Plaintiff brought a single count under Section 216(b) of the FLSA, arguing that Sprint did not keep accurate time records and did not compensate call center employees for all time spent performing integral and indispensable job duties. <u>See</u> Doc. #1 at 10-23. Plaintiff alleged that Sprint's conduct was willful and invoked the FLSA three-year limitations period. <u>See</u> <u>id.</u> at 34. Plaintiff also sought liquidated damages because Sprint did not act in good faith or with reasonable grounds to believe that its conduct complied with the FLSA. <u>Id.</u> at 35. On May 15, 2007, Sprint filed an answer which denied all material allegations and asserted nine affirmative defenses. <u>See</u> Doc. #14.

After Bruner filed suit, Sprint employees from call centers in California and New York retained

plaintiff's counsel to initiate class actions under Fed. R. Civ. P. 23. See Plaintiffs' Memorandum (Doc. #257) at 4. The class actions imitated the FLSA collective action in Bruner, but proceeded under state labor laws of California and New York. Id. Specifically, on May 18, 2007, Jena Lipnick and Jennifer Fong filed a class action complaint in California state court, asserting claims for (1) failure to pay overtime compensation under IWC Wage Order No.4 (8 C.C.R. § 11040) and California Labor Code §§ 510 and 1198; (2) failure to provide meal and rest periods in violation of California Labor Code §§ 226.7 and 512 and IWC Wage Order No.4 (8 C.C.R. § 11040); (3) failure to pay compensation due at termination under California Labor Code §§ 201, 202, and 203; (4) failure to furnish itemized wage statements under California Labor Code § 226; (5) failure to properly pay overtime compensation pursuant to the FLSA; and (6) violation of California Business & Professions Code § 17200. On June 18, 2007, Sprint removed the case to the United States District Court for the Northern District of California. Id.

On June 26, 2007, Johnny Almonte filed a class action complaint in the United States District Court for the Southern District of New York asserting claims for (1) failure to properly pay wages, including overtime compensation, pursuant to the FLSA; (2) failure to pay wages, including overtime 12 N.Y.C.R.R. Part 142; and (3) failure to pay wages and overtime for all hours worked under New York Labor Law Article 6 § 190 et seq. See Plaintiffs' Memorandum (Doc. #257) at 5. On September 7, 2007, the district court dismissed Sprint Nextel Corporation and Sprint/United Management Company but allowed the case to proceed against Nextel of New York, Inc. Id.

On August 3, 2007, plaintiff in Bruner filed a motion for conditional collective action certification pursuant to 29 U.S.C. § 216(b). See Plaintiffs' Motion For Conditional Collective Action Certification Pursuant To 29 U.S.C. § 216(b) And For Court-Authorized Notice. See Docs. #74, 75 filed

August 3, 2007.  The Court approved the motion on December 17, 2007.  See Memorandum And Order (Doc. #181).  The next day, the Court granted defendants' motion to vacate the conditional class action certification.  See Doc. ##182, 185.  On February 15, 2008, the parties advised the Court that they had reached a settlement in principle, but that additional steps were necessary to finalize the settlement.  These steps included transferring Lipnick and Almonte to this Court for settlement proceedings.  See Minute Sheet (Doc. # 204).  On March 24, 2008, the United States District Court for the Southern District of New York transferred Almonte to this Court.  See Transfer Order, attached as Ex. 1 to Plaintiffs' Memorandum (Doc. #257).  On March 18, 2008, the United States District Court for the Northern District of California transferred Lipnick.  See Transfer Order, attached as Ex. 2 to Plaintiffs' Memorandum (Doc. #257).  After transfer, the parties jointly moved to consolidate the three actions for purposes of a global settlement.  On May 21, 2008, the Court consolidated the three cases.  See Doc. #246.

On January 13, 2009, plaintiffs filed motions to approve the collective and class action settlements in the three cases.  See Plaintiffs' FLSA Motion (Doc. #256) filed January 13, 2009; Plaintiffs' Unopposed Motion For Preliminary Approval Of Class Settlements, For Certification Of Settlement Classes, And For Permission To Disseminate Notice To Classes ("Plaintiffs' Rule 23 Motion") (Doc. #258) filed January 13, 2009.  That same day, they filed a joint stipulation of settlement and release with regard to all three cases.  See Ex. 1 to Plaintiffs' FLSA Motion (Doc. #256-2); Ex. 1 to Plaintiffs' Rule 23 Motion (Doc. #258).  On February 2, 2009, plaintiffs filed a Notice Of Substitution (Doc. #261) which asked the Court to accept an amended stipulation of settlement which contained minor changes to the original stipulation.  See Ex. 1 to plaintiffs' Notice Of Substitution (Doc. #261).  On March 31, 2009, the Court preliminarily approved the settlements in the California and New York

4

class actions and set the matter for a fairness hearing on June 30, 2009.[1]  See Order Preliminarily Approving Class Action Settlement (Doc. #261).

Under the terms of the amended agreement, the global settlement becomes effective when the Court has entered a final order and judgment certifying the classes, dismissing the Bruner action with prejudice and approving the stipulation of settlement as it relates to the classes.  If all Kansas class members timely opt in, the maximum payment under the global settlement (including attorneys' fees and costs and enhancement fees to class representatives) is $8,771,000.  This amount will be apportioned into three settlement funds as follows: $6,446,000 for the Kansas Class, $2,000,000 for the California Class and $325,000 for the New York Class.  The settlement agreement further stipulates that plaintiffs' attorneys are entitled to fees, expenses and costs in an amount not to exceed 30 per cent of the settlement funds.  See Settlement Agreement (Doc. #260-2) filed February 2, 2009.  In the settlement agreement, "[d]efendant agrees not to object or oppose an award by the Court to Stueve Siegel Hanson LLP for fees, expenses and costs in an amount not to exceed a total of thirty percent (30%) of the Kansas Settlement Fund."  See Settlement Agreement ¶ 17 attached as Ex. 1 to Plaintiffs' FLSA Motion (Doc. #256) filed January 13, 2009.

Having preliminarily approved the parties' joint motion to approve the settlement of the state class action claims, the Court now addresses the parties' motion for final approval of the FLSA collective action in Bruner.[2]

_____

[1]      On May 19, 2009, the Court rescheduled the fairness hearing to July 27, 2009.

[2]      As noted, the fairness hearing in the state class actions is set for July 27, 2009.  As to attorneys' fees, plaintiffs' motion for final approval of the FLSA settlement raises issues which may well arise at the fairness hearing in the state actions.  The Court therefore intended to defer ruling on this motion for final approval of the FLSA settlement.  In response to prodding from plaintiffs'

(continued...)

**Attorneys' Fees And Costs**

Under the FLSA, plaintiffs' counsel are entitled to reasonable attorneys' fees accrued in recovering unpaid wages.  See 29 U.S.C. § 216(b).  Pursuant to the settlement agreement, plaintiffs' counsel seeks an award of $1,933,800.00, i.e. 30 per cent of the Kansas Settlement Fund.

In a common fund case attorneys' fees are awarded for different purposes than in a statutory fees case.  Brown v. Phillips Petroleum Co., 838 F.2d 451, 454 (10th Cir. 1988).  The common fund doctrine "rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its costs are unjustly enriched at the successful litigant's expense."  Boeing Co. v. Van Gemert, 444 U.S. 472, 478, 100 S.Ct. 745, 749 (1980).  Common fund fees derive from the premise that a trustee is entitled to reimbursement from the fund administered.  Trustees v. Greenough, 105 U.S. (15 Otto) 527, 532 (1881).  Fees in common fund cases are taken from the predetermined damage recovery rather than obtained from the losing party.  Brown, 838 F.2d at 454.  Common fund fees "are neither intrinsically punitive nor designed to further any statutory public policy."  Id.  Unlike statutory fees, which result in a shifting of the fee burden to the losing party, common fund fees result in a sharing of fees among those who are benefitted by the litigation.  Id.  When a common fund is created by settlement, courts have applied one of two methods in determining reasonable attorneys' fee awards: a percentage of the fund or lodestar method.[3]  See Rosenbaum v. MacAllister, 64 F.3d 1439, 1445 (10th Cir. 1995) (citing Uselton v.

---

[2](...continued)
counsel, however, and without opposition from Sprint, the Court proceeds to rule in advance of the fairness hearing.

[3]        The lodestar method involves the consideration of the reasonable hours expended by the attorneys multiplied by a reasonable rate (the "lodestar"), but also involves "considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the results obtained."  Strebel v. Milton Wagstaff Motor Co., No. 92-4115, 1995 WL 20265, at *3 (10th

(continued...)

Commercial Lovelace Motor Freight, Inc., 9 F.3d 849, 853 (10th Cir. 1993)).  In common fund cases, the Tenth Circuit applies a hybrid approach combining the percentage fee method with the specific factors traditionally used to calculate the lodestar.  See Gottlieb v. Barry, 43 F.3d 474, 483 (10th Cir. 1994).  In all cases, whichever method is used, the court must consider the twelve Johnson factors which are discussed below.  Id.

Where a percentage of the fund approach is used, a district court has discretion to reduce an award of attorneys' fees which if determined under the lodestar approach would be unreasonable.  See Wininger v. SI Mgmt. L.P., 301 F.3d 1115, 1125 (9th Cir. 2002); see also Powers v. Eichen, 229 F.3d 1249, 1258 (9th Cir. 2000) (neither lodestar nor percentage method should be applied in formulaic or mechanical fashion); In re Petroleum Prods. Antitrust Litig., 109 F.3d 602, 607 (9th Cir. 1997) (where lodestar amount overcompensates attorneys according to benchmark standard, second look to evaluate reasonableness of hours worked and rates claimed is appropriate).  The percentage reflected in a common fund award must be reasonable and, as in statutory fee cases, the district court must articulate specific reasons for fee awards demonstrating the reasonableness of the percentage and thus the reasonableness of the fee award.  See Brown, 838 F.2d at 454.  To determine reasonableness, federal courts have relied heavily on the factors which the Fifth Circuit Court of Appeals articulated in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974).  See, e.g., Ramos v. Lamm, 713 F.2d 546, 552 (10th Cir. 1983).  Those factors are as follows:

> (1) the time and labor required, (2) the novelty and difficulty of the question presented by the case, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorneys due to acceptance of the case, (5) the customary

---

[3](...continued)
Cir., Jan. 19, 1995).

fee, (6) whether the fee is fixed or contingent, (7) any time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

See Gottlieb v. Barry, 43 F.3d 474, 483 (10th Cir. 1994) (citing Johnson, 488 F.2d at 717-19).  The

Johnson factors are relevant in determining a reasonable fee in a common fund case.  See Brown, 838

F.2d at 456.

The Kansas Settlement Fund is $6,446,000.00.  See Plaintiffs' FLSA Motion (Doc. #256) at 12.

The settlement agreement provides that the amount allocated to each Kansas Class Member shall be

determined pursuant to a formula based "primarily" on "(1) the total number of weeks worked for

defendants during the class period in which overtime was worked based on adding a uniform amount

of time to the time worked as reflected in defendants' records, (2) compensation earned and (3) status

as an opt-in plaintiff as of the date of the approval of the settlement."  See Plaintiff's Memorandum

(Doc. #257) at 23.  Plaintiffs state that by the time the parties initiated settlement discussions,

approximately 200 current and former customer specialists had consented to join the Bruner case.  They

do not say how many plaintiffs will take part in the proposed settlement, but they estimate that the

allocation for the Kansas class will approximate $19.60 for each overtime work week in the class period,

i.e. from December 9, 2004 to March 27, 2008, or 172 weeks. Id. at 20.  Plaintiffs' FLSA Motion (Doc.

#256) at 2.  Therefore, the average recovery will approximate roughly $3,371.20 and one third of that

amount would be allocated to attorneys' fees.[4]

Each opt-in plaintiff executed a retainer agreement which entitled plaintiffs' counsel to 35 per

---

[4]        The Court recognizes that these numbers are rough approximates, based on available information.

8

cent of any recovery.  See Plaintiff's Memorandum (Doc. #257) at 23.  The requested percentage (30

per cent) is therefore five per cent less than that provided in the retainer agreements between counsel

and the individual plaintiffs.  Id.  Plaintiffs' counsel now seeks $1,933,800.00 for approximately 1,300

hours worked, or $1,487.54 per hour in the FLSA suit.[5]

Here, considering the following Johnson factors, the Court finds that the proposed award is

unreasonable.

**1.      Time And Labor Required**

The time and labor which Stueve Siegel Hanson expended in achieving this settlement is grossly

disproportionate to the size of the fee request.  In Brown, the Tenth Circuit noted that although the "time

and labor involved" factor does not necessarily determine the reasonableness of fees in the common

fund situation, this factor is still relevant and the availability of time records enhances the trial court's

ability to properly evaluate it.  See Brown, 838 F.2d at 451, n.3.  In awarding attorneys' fees in a

common fund case, the "time and labor involved" factor need not be evaluated using the lodestar

formulation when, in the judgment of the trial court, a reasonable fee is derived by giving greater weight

to other factors, the basis of which is clearly reflected in the record.  Ramah Navajo Chapter v. Babbitt,

50 F.Supp.2d 1091, 1097 (D.N.M. 1999) (citing Brown, 838 F.2d at 454).  Nevertheless, in Wininger,

the Ninth Circuit remanded an award of $7 million in attorneys' fees and expenses for 250 hours worked

or $28,000 per hour, and ordered the district court to award fees based on the lodestar formula.  See 301

F.3d 1115, 1125 (9th Cir. 2002).  Other courts have made similar reductions in fee awards where the

---

[5]      Plaintiffs' counsel also seeks $600,000 for 900 hours of work in the California class
action ($666.67 per hour) and $97,500 for 165 hours worked in the New York class action ($590.91
per hour).  See Memorandum In Support Of Plaintiffs' Motion For Final Approval Of Attorneys' Fees,
Expenses, And Class Representatives' Incentive Awards (Doc. #269) filed June 12, 2009, at 8.

proposed award was deemed unreasonable.  <u>See</u> <u>e.g.</u>, <u>Goldberger v. Integrated Res., Inc.</u>, 209 F.3d 43,

45 (2d Cir. 2000) (no abuse of discretion where district court applied lodestar method and awarded four

per cent of common fund, $2.1 million, instead of requested 25 per cent, $13.5 million); <u>Santos v.

Camacho</u>, No. 04-00006, 2008 WL 1699448, at *33 (D. Guam, April 10, 2008) (district court applied

lodestar method and reduced requested award of attorneys' fees and expenses from $9 million to less

than $4 million); <u>George v. Bay Area Rapid Transit, Dist.</u>, No. C-00-2206 CW, 2007 WL 2778784, at

*8 (N.D. Cal., Sept. 21, 2007) (refusing to enhance lodestar determination by applying multiplier of 2.0

or 3.0 where case not "rare" or "exceptional").

 Plaintiffs' counsel estimates that the Stueve Siegel Hanson expended "in excess of 1,300 hours"

to prosecute the FLSA action over 18 months.  <u>Id.</u>  The record makes no further reference to the time

or labor required.[6]  It does not include any contemporaneous record of hours worked, it does not identify

who worked on the case, and it does not explain what customary rates or contingent fee rates for those

individuals would be.  Also, it does not address what prevailing market rates for this work would be.


 In summary, the percentage of the fund method results in a fee which cannot be justified when

evaluated under the lodestar method.  Furthermore, the Court is not even persuaded that a flat percentage

of the fund is appropriate here.  As noted, a single plaintiff brought this suit and about 200 plaintiffs later

opted in.  Nothing in the record suggests that this case thereby became 200 times more complicated or

expensive.  Indeed, because nothing in the record suggests otherwise, the Court would assume that the

---

  [6] The Court recognizes that in the past, it has, on similar records, approved settlements
in FLSA collective actions.  The magnitude of the hourly fee request in this case, however, demands
closer scrutiny.

marginal effort would be diminished dramatically for each additional plaintiff.  Thirty per cent (or even 35 per cent) might be an appropriate award in a case which involves a single plaintiff or a collective action which involves few plaintiffs.  When applied to actions which involve a large number of plaintiffs, a flat contingent fee easily creates (and in this case, would create) a huge windfall to plaintiffs' counsel.

As noted, attorneys' fees in a common fund case derive from the premise that to avoid unjust enrichment at the expense of a successful litigant, those who share the benefits of the litigation should share the expenses and that fees should be awarded from the common fund.  It makes perfect sense to divide a fixed sum of reasonable attorneys' fees among those who benefit from the litigation, and to pay those fees from the common fund.  It makes less sense (much less) to establish a percentage of the fund approach as to one successful litigant, then levy an identical surcharge on all additional recoveries with no regard for the time or effort required to litigate additional claims on behalf of additional claimants.  In summary, this record does not justify a percentage of the fund award as plaintiffs propose to structure it.  It results in a windfall for plaintiffs' counsel and appears to have no relation to the time, expense or risk of litigation or the other factors enumerated in Johnson.

**2.      The Novelty And Difficulty Of The Question Presented By The Case**

Where the legal and factual questions in a case are not novel or overly difficult but are considered somewhat complicated, this factor does not favor a particularly high or low fee.  Norwood v. Charlotte Mem. Hosp. and Med. Ctr., 720 F.Supp. 543, 550 (W.D.N.C. 1989); see also Matter of Moore, 36 B.R. 323, 329 (Bkrtcy. Ga. 1984) (complex but not unique or novel issue of law did not warrant upward adjustment in fee award).

While fact intensive, this case does not present difficult issues of fact or law.  The applicable law

is well settled and not complex, especially for counsel like Stueve Siegel Hanson who are experts in the area. Counsel argues that this case was complex because "[p]laintiffs bore the burden of ultimately demonstrating to the Court that a group of 'similarly situated' employees existed such that the case could be maintained as a 'collective action' pursuant to Section 216(b) of the FLSA." See Plaintiffs' Memorandum (Doc. #257) at 23. That procedural hurdle is involved in any collective action, however, and as noted, the record does not show that this case is particularly complex.

Counsel argues that the complexity of this case is further demonstrated by the uncertainty of prevailing on the merits. The inherent risk of prosecuting this case, however, did not increase the novelty or difficulty of the issues presented. Furthermore, the Court takes judicial notice of the fact that at least in this judicial district, FLSA collective actions rarely fail. Almost all cases are settled prior to trial at a sum which presumably takes into account their merit or lack of merit.[7] Very few FLSA

---

[7]        See, e.g., Barnwell v. Corr. Corp. of Am., No. 08-CV-2151 (D. Kan. Feb. 12, 2009); Nickel v. Eagle Nationwide Mortgage Co., No. 08-CV-2118 (D. Kan. Dec. 29, 2008); Fleshman v. Daras Fast Lane, Inc., No. 07-CV-2514 (D. Kan. Aug. 20, 2008); Harrison v. First Horizon Nat'l Corp., No. 07-CV-02404 (D. Kan. Mar. 4, 2008); Payson v. Capital One Home Loans, LLC, No. 07-CV-2282 (D. Kan. Mar. 26, 2009); Keys v. Akal Sec., Inc., No. 07-CV-1047 (D. Kan. Oct. 29, 2008); Truster v. Spring Valley Reg'l Ctr. For Youth, Inc., No. 06-CV-2542 (D. Kan. Dec. 21, 2007); Bonavia v. Accredited Home Lenders, Inc., No. 06-2479 (D. Kan. July 26, 2007); Renfro v. Spartan Computer Serv., No. 06-CV-02284 (D. Kan. Jul. 24, 2008); Sohn v. Premier Bank, No. 06-CV-2121(D. Kan. Aug. 9, 2006); West v. First Franklin Fin. Corp., No. 06-CV-02064 (D. Kan. July 31, 2007); Most v. Gen. Nutrition Ctrs., No. 06-2330 (D. Kan. July 23, 2007); Niday v. SCK Fin. Corp., No. 06-CV-2219 (D. Kan. Mar. 14, 2007); Bethune v. Heartland Auto. Serv., Inc., No. 06-2039 (D. Kan. Sept. 1, 2006); Archer v. Nat. Bank of Kansas City, No. 05-CV-2382 (D. Kan. Feb. 8, 2006); Horn v. Principal Fin. Group, Inc., 05-CV-2032 (D. Kan. Dec. 2, 2005); Lamb v. Sprint United Mgmt. Co., No. 05-CV-2023 (D. Kan.  Mar. 24, 2006); Greer v. Challenge Fin. Inv. Corp., No. 05-CV-1109 (D. Kan. Oct. 12, 2007); Gieseke v. First Horizon Home Loan Corp., No. 04-CV-2511 (D. Kan. Oct. 14, 2004); Carson v. Bank of Blue Valley, Inc., No. 04-CV-02507 (D. Kan. Oct. 12, 2004); Barnes v. AKAL Sec. Inc., No. 04-1350 (D. Kan. Sept. 21, 2007); Lynn v. Gen. Elec. Co., No. 03-CV-2662 (D. Kan. June 28, 2006); Hammond v. Lowe's Home Ctr., Inc., No. 02-CV-2509 (D. Kan. Mar. 22, 2007).

collective actions are dismissed on their merits.[8]  Almost none proceed to trial.[9]  These numbers suggest

that as a general rule – perhaps because of the cost of litigation, employers' adversity to risk, prevailing

employment practices or other factors – FLSA collective actions have substantial settlement value and

relatively low risk of complete failure.  Therefore, the uncertainty of success on the merits does not

establish that the case presented novel or difficult questions.

**3.     The Skill Requisite To Perform The Legal Service Properly**

Stueve Siegel Hanson frequently prosecutes matters like this one.[10]   Counsel are extremely

knowledgeable about collective action procedure in FLSA actions and the firm is well prepared to

manage FLSA cases, whether complex or garden variety (as this one appears to be).  The format and

content of the briefs in this case are strikingly similar to those which counsel has submitted in prior

similar cases, and the record does not suggest that this case required extraordinary skill to properly

prosecute.

**4.     Preclusion From Other Work**

Plaintiffs' counsel does not address factor four, and the record contains no evidence that Stueve

---

[8]     See, e.g., Smith v. Burlington N. Santa Fe Ry Co., Inc. et al, No. 06-CV-2151 (D. Kan. Nov. 1, 2006) (order granting motion to dismiss); Walters v. KSU, No. 94-CV-04006 (D. Kan. Oct. 31, 1994) (same).

[9]     See, e.g., Robinson v. Food Serv. of Belton Inc., No. 04-CV-02321 (D. Kan. Sept. 12, 2005) (trial with verdict for plaintiffs); Barajas v. Unified Gov't of Wyandotte County, No. 99-CV-02448 (D. Kan. Aug. 22, 2001) (trial with verdict for defendant); Albright v. City of Leavenworth, No. 92-CV-02442 (D. Kan. Dec. 10, 1993) (trial with verdict for defendant).

[10]    See, e.g., Nickel., No. 08-CV-2118 (D. Kan. Dec. 29, 2008); Harrison, No. 07-CV-02404 (D. Kan. Mar. 4, 2008); Renfro, No. 06-CV-02284 (D. Kan. Jul. 24, 2008); West, No. 06-CV-02064-KHV-JPO (D. Kan. July 31, 2007); Niday., No. 06-CV-2219-CM (D. Kan. Mar. 14, 2007); Bowne v. Wells Fargo Bank, No. 06-CV-2020 (D. Kan. Jan. 19, 2006); Sohn, No. 06-CV-2121(D. Kan. Aug. 9, 2006); Archer, No. 05-CV-2382 (D. Kan. Feb. 8, 2006); Horn, 05-CV-2032-KHV (D. Kan. Dec. 2, 2005); Gieseke, No. 04-CV-2511 (D. Kan. Oct. 14, 2004); Carson, No. 04-CV-02507 (D. Kan. Oct. 12, 2004).

Siegel Hanson was precluded from conducting other business during the 18-month period that it prosecuted this matter. Indeed, because the entire firm expended only 1,300 hours, the case obviously was not a full-time effort for 18 months. In addition, as noted, the firm has prolific experience prosecuting FLSA class actions and has apparently developed a proven system for obtaining large settlements in relatively short periods of time with relatively little work. While plaintiffs' counsel undoubtedly invested financial resources with the possibility of no return in the form of a judgment or settlement, this risk is inherent in all plaintiffs' litigation.

**5.    The Customary Fee**

While the Tenth Circuit applies a hybrid approach in determining the reasonableness of fees in common fund cases, the customary fee award is typically derived from a percentage of the fund. See Rosenbaum v. MacAllister, 64 F.3d 1439, 1445 (10th Cir. 1995); Gottlieb v. Barry, 43 F.3d 474, 482 (10 th Cir. 1994). This Court has also typically applied the percentage of the fund method when awarding fees in common fund, FLSA collective actions. Fee awards in these cases have ranged from four per cent to 58 per cent of the common fund and resulted in total fee awards ranging from a few thousand dollars to over $5 million. See Stipulation And Order (Doc. #246) filed in Hammond, No. 02-CV-2509 (D. Kan. Mar. 22, 2007); Joint Sealed Motion And Supporting Memorandum For Approval Of Settlement (Doc. #157) filed in Lynn, No. 03-CV-2662 (D. Kan. June 28, 2006); Unopposed Sealed Motion For Approval Of Settlement (Doc. #21) filed in Nickel v. Eagle Nationwide Mortgage Co., No. 08-CV-2118 (D. Kan. Dec. 29, 2008).

Stueve Siegel Hanson customarily enters into contingent fee arrangements which provide for a percentage of the recovery (between 35 and 40 per cent) if there is a recovery and no fee if there is no recovery. See Plaintiffs' Memorandum (Doc. #257) at 23. Here, the percentage of the fund requested

by counsel is within the customary percentage of the fund approved by this Court and also within the customary fee range which counsel appears to charge in similar matters. The Court would approve of the percentage if it resulted in a fee award which was otherwise reasonable.

**6.     Whether The Fee Is Fixed Or Contingent**

Here, the named plaintiff and each of approximately 200 opt-in plaintiffs executed retainer agreements which entitled plaintiffs' counsel to 35 per cent of any recovery. See Plaintiffs' Memorandum (Doc. #257) at 23. Plaintiffs' counsel now requests five per cent less than that agreed to in the retainer agreements. The Court is not particularly impressed, however, by the fact that all plaintiffs agreed to a 35 per cent contingency fee. Nothing suggests that any plaintiffs had any relevant experience or ability to negotiate the fee contract with plaintiffs' counsel. Furthermore, the Court determines the fees to be awarded in an FLSA collective action, see Gottlieb, 43 F.3d at 483, and the parties' agreements constitute only one of many relevant factors. Therefore, the primary efficacy of the contingent fee agreements in this case is to establish that plaintiffs are not liable for fees if no recovery is obtained. They are not conclusive evidence that a 30 per cent contingent fee is reasonable.

**7.     Time Limitations**

Plaintiffs' counsel offers no evidence that plaintiffs imposed any time limitations on counsel during the litigation process. Nor does the record suggest that other circumstances imposed time limitations on plaintiffs' counsel during any stage of the litigation process. Counsel was not pressured by the time constraints of preparing for trial or responding to contested motion practice.

**8.      The Amount Involved And The Results Obtained**

In achieving a settlement fund of almost $6.5 million, plaintiffs' counsel obtained a favorable result for opt-in plaintiffs and avoided the uncertainty and rigors of trial. The settlement approximates

the amount which individual claimants could have expected to receive assuming a successful outcome at trial. Counsel efficiently obtained this award while simultaneously achieving a limited release for plaintiffs. Thus, plaintiffs retain the right to bring future actions on potential claims not related to this action.

**9.      The Experience Reputation And Ability Of The Attorneys**

Plaintiffs' attorneys, especially George Hanson, are highly experienced, having tried more than 40 wage and hour cases in state and federal court over the last seven years. Stueve Siegel Hanson also prosecutes a large number of non-FLSA class actions and is experienced in the general practice of collective action litigation. Mr. Hanson is a frequent speaker on wage and hour matters nationwide. He is highly capable and enjoys an excellent reputation.

**10.     Undesirability Of The Case**

Nothing in the record indicates that this case was in any way undesirable for counsel. To the contrary, it appears that plaintiffs' counsel actively seeks out this type of FLSA litigation and has established a lucrative practice in this area. Nothing in the record suggests that this type of practice is unattractive or unprofitable. Since its founding in 2001, Stueve Siegel and Hanson has achieved successful outcomes in all manner of collective action litigation, generating millions of dollars through trial verdicts and settlements. Counsel's extensive background in this type of litigation allows them to proceed in such cases with greater efficiency than less experienced attorneys. In addition, counsel is no doubt able to more effectively determine which potential FLSA claims are more likely to succeed at trial or through settlement.

**11.     The Nature And Length Of The Professional Relationship With The Client**

Plaintiffs' counsel presents no evidence of any pre-existing attorney/client relationship with the

16

plaintiffs.  The meaning of this factor, however, and its effect on the calculation of a reasonable fee has always been unclear.  Lucas v. Kmart Corp., No. 99-cv-01923-JLK-CBS, 2006 WL 2729260, at *7 (D. Colo. July 27, 2006) (citing Ruiz v. Estelle, 553 F.Supp. 567, 594 (S.D. Tex. 1982)).  Courts applying the Johnson factors typically state that this particular standard is irrelevant or immaterial.  Ruiz, 553 F.Supp. at 594.

**12.     Awards In Similar Cases**

Plaintiff cites nine cases as evidence that the award sought is commensurate with fee awards in other FLSA cases which apply the "percentage of the fund" approach.  See Plaintiffs' Memorandum (Doc. #257) at 21-22.  Three of these cases are cases which Steuve Siegel Hanson prosecuted in this Court.  See West v. First Franklin Fin. Corp., No. 06-CV-02064-KHV (D. Kan. July 31, 2007), Horn v. Principal Fin. Group, Inc., 05-CV-2032-KHV (D. Kan. Dec. 2, 2005) and Niday v. SCK Fin. Corp., No. 06-CV-2219-CM (D. Kan. Mar. 14, 2007).  The fee awards in these cases ranged from $45,000.00 to $1,034,644.20 and represented percentage of the fund awards between 28 and 30 per cent of the settlement fund.  None of the briefs indicate the hourly billable rate for Steuve Siegel Hanson and only the record in West indicates the estimated number of hours billed in the case.  Applying the lodestar method in West, counsel's award resulted in an hourly billable rate of $862.00 per hour.[11]  Also, Steuve Siegel Hanson was class counsel in Perry v. Nat'l City Bank, No. 05-CV-891-DRH-PMF (S.D. Ill. Mar. 3, 2008), where the district court applied the percentage of the fund method and approved an attorneys' fees award of $9,075,000, or 33 per cent of the total settlement fund.  Again, the record in Perry gives no indication of the number of hours worked by class counsel or the customary rate for this type of work.     The remaining cases support plaintiffs' request for a fee award of 30 per cent.  See Qualls

---

[11]     Counsel documented 1,200 hours of work in West.

v. Sanofi-Aventis U.S. LLC, No. 06-435-CV-W-SOW (W.D. Mo. Dec. 4, 2006) (approving $840,000.00 in attorneys' fees from $2,800,000.00 settlement fund); Frank v. Eastman Kodak Co., 228 F.R.D. 174 (W.D.N.Y. 2005) (approving $50,000.00 in attorneys' fees from $125,000.00 settlement fund), Kidrick v. ABC Television Appliance Rental, No. 97-69, 1999 WL 1027050, at *4 (N.D. W.Va. May 12, 1999) (approving $122,539.84 in attorneys' fees from $367,619.00 settlement fund); Camp v. The Progressive Group, No. 01-2680, 2004 WL 2149079, at *22 (E.D. La. Sep. 23, 2004) (approving $1,600,000.00 in attorneys' fees from $5,400,000.00 settlement fund). The awards in Frank, Camp and Kidrick were all based on the percentage of the fund method, but under the lodestar method, none of the three awards exceeded a billable hour rate of $225.00 per hour for legal work similar to that performed in this matter. See Frank 228 F.R.D. at 188, Camp, 2004 WL 2149079, at *20, Kidrick, 1999 WL 1027050, at *2. In Camp, class counsel billed 7,600 more hours than class counsel in this matter but received less in fees than plaintiffs' counsel seeks here.   See Camp, 2004 WL 2149079, at *20 (resulting in award of approximately $179 per hour); see also In re Monosodium Glutamate Antitrust Litig., No. 00-MDL-1328-PAM, 2003 WL 297276, at *2 (D. Minn., Feb 2, 2003) (approval of $24,420,000.00 in fees amounted to $558.00 per hour billable rate).

As noted, plaintiffs' counsel provides no billing record other than to state that the firm expended 1,300 hours prosecuting this case. While this Court previously approved a percentage of the fund award for basically identical work in West, it cannot in good conscience award almost twice that amount for essentially the same work in this case. As stated previously, plaintiffs' requested fee award would equal a billable hour rate of $1,487.54 per hour – a rate which is unreasonable in this market for this work. Plaintiffs' counsel has provided no evidence that a fee award of this magnitude has been approved in any similar FLSA case in this geographical area or that its work in this case merits such compensation.

Ironically, in fact, plaintiffs' counsel seeks $666.67 per hour in the California class action and $590.91 per hour for work in the New York class action which appears to be materially indistinguishable from that performed in Bruner.  Plaintiffs' counsel suggests no reason why legal services should be 2.6 times more expensive in Bruner than they are in Almonte, given the longstanding disparity between legal rates in Kansas City, Missouri and those in New York, New York.[12]  The record suggests no material difference in the factual or legal complexity of the issues raised in Bruner, Lipnick and Almonte.  The Court will therefore award plaintiffs' counsel $590.91 an hour for the work performed in this case, or $768,183.00 in attorneys' fees and expenses.[13]  This award is generous, given the nature of the litigation and the fact that billing rates in this region, even for the most experienced attorneys do not typically exceed this hourly rate.

For the record, the Court notes its concern about settlement agreements in which defendants agree not to object to or oppose any given fee request.  Such agreements deprive the court of a full record and benefits of the adversary process.  They encourage plaintiffs' counsel to maintain inadequate contemporaneous time records and to submit their fee requests on records which cannot withstand the adversary process.  They promote a lackadaisical approach to fee litigation – regrettably forcing the Court to act as adversary to plaintiffs' counsel in examining fee applications.  They can lead to unreasonable fee requests.  To top it off, such stipulations have no apparent benefit to plaintiffs.  The only beneficiaries are plaintiffs' counsel (including Stueve Siegel Hanson but by no means limited to that firm) who would insulate their fee requests from scrutiny through the adversary process.

---

[12]     Obviously, the same point holds true for Kansas City, Missouri and Oakland, California, where co-counsel in Lipnick are located.

[13]     The Court arrives at this number by multiplying the number of hours billed in this matter (1,300) by the hourly rate which plaintiffs' counsel seeks in Almonte ($590.91).

By silencing the opposing parties in a particular case, plaintiffs deprive the Court of extremely valuable information.  See Shrout v. Holmes, No. 00-2069-KHV, 2001 WL 980280, at *3, n.5 (D. Kan. Aug. 10, 2001) (total fees defendants incurred relevant in assessing overall reasonableness of fee requested by plaintiff); see also Pooshs v. Fluoroware, Inc., No. No. 94-16588, 1996 WL 195542, at *5 (9th Cir. 1996) (district court proper in considering that plaintiff's counsel should be awarded fees based on hourly rate comparable to that paid defense counsel); Hnot v. Willis Group Holdings Ltd., No. 01-Civ- 6558-GEL, 2008 WL 1166309, at *3 (S.D.N.Y. April 7, 2008) (information on fees incurred on both sides of case useful cross-check on whether plaintiffs' request out of proportion to magnitude of litigation); Ruiz v. Estelle, 553 F.Supp. 567, 584 (S.D. Tex. 1982) (fees of plaintiff and defendant compared in evaluating plaintiffs' fee application); Swann v. Charlotte-Mecklenburg Bd. of Ed., 66 F.R.D. 483, 485 (W.D.N.C. 1975) (fees paid to opposing counsel pertinent in determining fee award). Accordingly, the Court gives notice that in the future, it will skeptically examine and presumably overrule any fee proposal which is presented in a non-adversarial context.

### Incentive Award

Plaintiffs seek a $10,000.00 incentive award for named plaintiff Brandi Bruner.  Plaintiffs state that Bruner initiated the action and "provided invaluable guidance and assistance to Plaintiffs' counsel in prosecuting these overtime claims on behalf of the FLSA class." See Plaintiffs' Memorandum (Doc. #257) at 25.  Plaintiffs also state that Bruner "assisted Plaintiffs' counsel in evaluating Defendants' proffered defenses to this action, participated in discovery, and helped engineer this favorable settlement." Id.  Plaintiffs do not provide any specific details on the number of hours invested by Bruner, how exactly she was involved, whether she was deposed or any other information concerning her involvement.

In support of the proposed incentive award, plaintiffs cite <u>In re Sprint Corp. ERISA Litig.</u> 443 F. Supp. 2d 1249, 1271 (D. Kan. 2006).  In <u>Sprint</u>, this Court denied an incentive award of $15,000.00 where each named plaintiff devoted an average of 80 hours to the litigation process.  <u>Id.</u>  The Court instead awarded $5,000.00 to each named plaintiff.  <u>Id.</u> at 1272.  Without evidence that Bruner invested more time than the named plaintiffs in <u>Sprint</u>, an award of $10,000.00 is unreasonable.  The Court awards Bruner $5,000.00 for her role in this matter.[14]

**IT IS THEREFORE ORDERED** that class counsel is entitled to attorneys' fees and costs in the amount of $768,183.00.

**IT IS FURTHER ORDERED** that representative plaintiff Brandi Bruner is entitled to an incentive award in the amount of $5,000.00.  Defendant shall pay the attorneys' fees, costs and incentive awards in accordance with the terms of the Settlement Agreement.

The Court approves the Settlement Agreement, attached as Ex. 1 to Plaintiffs' <u>Notice Of Substitution</u> (Doc. #260) filed February 2, 2009 and solely for purposes of settlement certifies this action as a collective action under Section 16(b) of the FLSA.  The action shall include all persons employed by defendant as customer care call-center representatives who had as his or her primary duty responding to inbound calls at defendant's call centers in Oklahoma City, Oklahoma; Orlando, Florida; Charlotte, North Carolina; Rio Rancho, New Mexico; Fort Worth, Texas; and Lenexa, Kansas at any time between December 9, 2004 and March 27, 2008 ("the Kansas Class").  The Court appoints Stueve Siegel Hanson LLP as class counsel and also approves the <u>Notice Of Collective Action Settlement</u> ("Notice") attached as Exhibit A to <u>Plaintiffs' FLSA Motion</u> (Doc. #256) and the <u>Opt-In and Release Form</u> ("Release")

---

[14]    This award is generous because the record contains no evidence of the time which Bruner invested in the case.

attached as Exhibit B to Plaintiffs' FLSA Motion (Doc. #256).  On or before July 30, 2009, defendant will provide the claims administrator the names and addresses of members of the Kansas Class.  On or before August 14, 2009, the claims administrator shall disseminate the Notice and Release to the class in accordance with the Settlement Agreement.  Putative class members shall have **60 days** from the date of mailing of such Notice and Release to exercise their right to opt in to this collective action by returning an executed Release to class counsel.  Defendant shall pay all eligible class members who opt into this collective action in accordance with the terms of the Settlement Agreement.

**IT IS FURTHER ORDERED** that plaintiffs' action, see Complaint (Doc. #1) filed April 24, 2007 be and hereby is **DISMISSED**.

Dated this 14th day of July, 2009 at Kansas City, Kansas.

s/ Kathryn H. Vratil
Kathryn H. Vratil
United States District Judge

22